1          UNITED STATES OF AMERICA
            UNITED STATES DISTRICT COURT
2          SOUTHERN DISTRICT OF CALIFORNIA

3                      - - -
4              HONORABLE PETER C. LEWIS
        UNITED STATES MAGISTRATE JUDGE PRESIDING
5                      - - -

6    UNITED STATES OF AMERICA,   )
                                 )
7              PLAINTIFF,        )
                                 )
8    VS.                         ) NO. 13MJ8185-PCL
                                 )
9    MANUEL GONZALES,            )
                                 )
10             DEFENDANT.        )
     _____)
11

12                    **DETENTION HEARING**
13
             REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                   **MARCH 18, 2013**
                  SAN DIEGO, CALIFORNIA
15

16

17       MELISSA A. PIERSON, CA CSR 12499,
                IL CSR 084-003134, RPR
18          FEDERAL OFFICIAL COURT REPORTER
             221 W. BROADWAY, ROOM 3155
19          SAN DIEGO, CALIFORNIA 92101
                PH:  (619)702-7508
20          USDCTRANSCRIPTS@GMAIL.COM

21

22

23

24

25

1    APPEARANCES OF COUNSEL:

2    ON BEHALF OF PLAINTIFF:
              LAURA E. DUFFY
3             UNITED STATES ATTORNEY
              BY:  MR. MATTHEW BREHM, ESQ.
4             ASSISTANT UNITED STATES ATTORNEYS
              880 FRONT STREET
5             (EL CENTRO COURTHOUSE)
              SAN DIEGO, CA 92101
6             (619) 557-5610

7

     ON BEHALF OF DEFENDANT:
8             FEDERAL DEFENDERS OF SAN DIEGO
              (EL CENTRO COURTHOUSE)
9             BY:  MR. JAMES JOHNSON, ESQ.
              225 W. BROADWAY
10            ST. 900
              SAN DIEGO, CA 92101
11            (619) 234-8467

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              SAN DIEGO, CALIFORNIA; MONDAY, MARCH 18, 2013

2                              - - -

3                   (COURT IN SESSION AT 10:57 A.M.)

4            MADAM CLERK:  13MJ8185, USA VERSUS MANUEL GONZALES,

5     FOR DETENTION HEARING.

6            MR. JOHNSON:  JAMES JOHNSON, FEDERAL DEFENDERS, FOR

7     MR. GONZALES, WHO'S PRESENT, IN CUSTODY, YOUR HONOR.

8            THE COURT:  OKAY.  MR. BREHM, I THINK THIS WAS THE

9     GOVERNMENT'S MOTION FOR DETENTION.

10           MR. BREHM:  YES, YOUR HONOR.

11           THE COURT:  IS THIS GOING TO GO FORWARD?

12           MR. BREHM:  YES.

13           THE COURT:  WOULD YOU LIKE TO MAKE A PROFFER?

14           MR. BREHM:  YES, YOUR HONOR.  BASED ON THE CHARGE,

15    AS YOUR HONOR CAN SEE, AND AGAIN, THE MOTION WAS BASED ON

16    RISK OF FLIGHT AND DANGER TO THE COMMUNITY, THERE IS A

17    PRESUMPTION HERE.  THE DEFENDANT IS FACING A TEN-YEAR

18    MANDATORY MINIMUM IN THE FEDERAL PRISON, SO THERE IS A STRONG

19    INCENTIVE TO FLEE.

20           THE COURT:  WHAT'S THE STATUTE?

21           MR. BREHM:  IT IS 18 USC 2422, SUB B.

22           THE COURT:  PAREN OR JUST --

23           MR. BREHM:  I'M SORRY, YES.

24           THE COURT:  (B).  THAT INVOLVES A TEN-YEAR MINIMUM

25    MANDATORY SENTENCE?

1          MR. BREHM:  YES, YOUR HONOR.

2          IN ADDITION, THE PRESUMPTION APPLIES BOTH FOR

3   DANGER TO THE COMMUNITY AND TO RISK OF FLIGHT.  BESIDES THE

4   LARGE AMOUNT OF TIME THE DEFENDANT IS FACING, THIS CRIME ALSO

5   CARRIES A GREAT AMOUNT OF STIGMA TO IT, YOUR HONOR, WHICH

6   FURTHER INCREASES THE LIKELIHOOD THAT SOMEONE WOULD -- AS

7   YOUR HONOR CAN SEE FROM THE REFERENCE TO THE PROBABLE CAUSE

8   STATEMENT IN THIS CASE, THE EVIDENCE AGAINST THE DEFENDANT IS

9   STRONG.  HE MET THE MINOR ONLINE AND SUBSEQUENTLY MET WITH

10  HIM IN PERSON ON THREE OCCASIONS AND ENGAGED IN SEXUAL

11  CONDUCT WITH HIM.

12         IN POST-MIRANDA STATEMENTS, MY UNDERSTANDING IS HE

13  ADMITTED TO THESE MEETINGS, BUT DIDN'T UNDERSTAND OR KNOW

14  THAT THE JUVENILE WAS 15.  BUT TEXT MESSAGES WERE EXCHANGED

15  WHICH SHOW THAT THE TWO INDIVIDUALS, THE DEFENDANT SPOKE WITH

16  THE CHILD ABOUT WHEN HE WOULD TURN OLD ENOUGH TO DRIVE; AND

17  ALSO TALKED WITH THE CHILD ABOUT SNEAKING OUT OF THE HOUSE,

18  INDICATING THAT HE DID ACKNOWLEDGE HIS AGE.

19         IN ADDITION TO THAT, THE DEFENDANT ALSO

20  ACKNOWLEDGED THAT HE HAS TRADED CHILD PORNOGRAPHY.

21         SO FOR ALL THESE REASONS THE GOVERNMENT IS ASKING

22  THAT THE DEFENDANT BE DETAINED.  ALL OF THE POINTS IN THIS

23  CASE POINT TO THE FACT THE DEFENDANT IS A DANGER TO THE

24  COMMUNITY.

25         THE COURT:  OKAY.  FOR THE DEFENSE.

1    MR. JOHNSON:  YOUR HONOR, I WAS REVIEWING THE BAIL

2    STATUTE THIS MORNING PRIOR TO COURT JUST TO REFRESH MY MEMORY

3    ON IT, AND I BELIEVE WHEN THE COURT SETS BAIL, THE COURT IS

4    TO IMPOSE THE LEAST RESTRICTIVE CONDITIONS THAT REASONABLY

5    ASSURE HIS APPEARANCE HERE IN COURT.

6    MR. GONZALES -- BEFORE I GET STARTED TOO FAR ALONG

7    I WOULD LIKE TO POINT OUT TO THE COURT THERE IS A SUBSTANTIAL

8    SHOWING TODAY OF FAMILY MEMBERS, IN SUPPORT.  PRESENT ARE HIS

9    PARENTS, JOSE AND YOLANDA.  ALSO PRESENT ARE HIS THREE

10   SISTERS, VALERIE, NORMA AND CARINA.  HE HAS TWO OF HIS

11   ROOMMATES THAT HE LIVES WITH, ONE IS A CHILDHOOD FRIEND.  YOU

12   HAVE TO EXCUSE ME, I DON'T KNOW THEIR NAMES, AND HIS WIFE.

13   AND I BELIEVE HE ALSO HAS TWO AUNTS THAT ARE ALSO PRESENT IN

14   COURT TODAY.

15   THE COURT:  WELL, THANK YOU ALL FOR BEING HERE.

16   YOU KNOW, IF YOU LOOKED AROUND TODAY, I DON'T THINK WE HAD

17   ANYBODY ELSE HERE IN COURT FOR ANY DEFENDANTS HERE.  SO

18   WHATEVER HAPPENS HERE TODAY, IT MEANS A LOT TO MR. GONZALES

19   THAT -- MEANS A LOT TO ME, TOO, BUT IT MEANS A LOT TO

20   MR. GONZALES AS TO THE SUPPORT HE'S RECEIVING FROM THE

21   FAMILY.  MOST DEFENDANTS, LIKE I TRIED TO ARTICULATE, DON'T

22   HAVE ANYBODY HERE SUPPORTING THEM.  SO TO HAVE FAMILY HERE

23   MEANS A LOT TO MR. GONZALES.  IT REALLY DOES.  I'M SORRY.

24   MR. JOHNSON:  NO PROBLEM.  MR. GONZALES IS 28 YEARS

25   OLD.  HE IS A UNITED STATES CITIZEN.  HE WAS BORN HERE IN EL

1  CENTRO.  HE HAS NO PRIOR CRIMINAL CONVICTIONS.  HE HAS NO

2  PRIOR FAILURES TO APPEAR IN COURT.  AS I OFTEN INDICATE TO

3  THIS COURT, THAT'S PROBABLY THE BEST INDICATOR WHETHER

4  SOMEBODY WILL SHOW UP AND MAKE THEIR COURT APPEARANCES.

5         HE HAS LIVED IN EL CENTRO FOR 26 YEARS OF HIS LIFE.

6  THE TWO YEARS THAT HE DID NOT RESIDE HERE HE WAS ATTENDING

7  THE ACADEMY FOR THE CALIFORNIA DEPARTMENT OF CORRECTIONS

8  REHABILITATION IN GALT, CALIFORNIA.  AND THEN, HE WORKED AT

9  THE HIGH DESERT STATE PRISON IN SUSANVILLE.  SO THAT TOOK UP

10  TWO YEARS.  AS SOON AS HE COULD GET A TRANSFER BACK TO EL

11  CENTRO, HE APPLIED FOR IT AND RECEIVED IT; AND HE HAS,

12  ESSENTIALLY, I BELIEVE, WORKED FOR THREE YEARS NOW IN

13  CALIPATRIA STATE PRISON WHERE HE'S A CORRECTIONAL OFFICER.

14         HE HAS PURCHASED A HOUSE IN HEBER, THEREBY GIVING

15  HIM TIES TO THE COMMUNITY.

16         HE ALSO HAS SUBSTANTIAL FAMILY TIES.  THE

17  INDIVIDUALS PRESENT IN COURT ALL LIVE HERE IN THE IMPERIAL

18  VALLEY.  I THINK THE ONE SISTER RESIDES IN IMPERIAL, ANOTHER

19  ONE IN EL CENTRO.  HIS PARENTS ALSO RESIDE IN EL CENTRO.  I

20  GUESS TWO OF HIS SISTERS RESIDE IN EL CENTRO.  THEY ESTIMATE

21  THEY PROBABLY HAD AT LEAST 100 FAMILIES MEMBERS, IF YOU LOOK

22  AT ALL THEIR AUNTS AND UNCLES AND COUSINS, THAT RESIDE HERE.

23  SO HE DOES HAVE STRONG FAMILY TIES TO THE COMMUNITY.

24         HE GRADUATED FROM SOUTHWEST HIGH SCHOOL IN 2002.

25  AND FROM THE CORRECTIONAL OFFICER ACADEMY UP IN GALT, IN

1   2008.  SO I DON'T THINK FLIGHT IS PARTICULARLY AT ISSUE HERE.

2           WITH RESPECT TO DANGER TO THE COMMUNITY, I MEAN, IN

3   TERMS OF ARGUING THESE MOTIONS, I THINK ARE IN THE MIX OF

4   THINGS THE COURT IS TO CONSIDER WHEN SETTING BAIL AND

5   DECIDING THE FACTS OF THE CASE WOULD BE THE LEAST -- GIVEN

6   THE LEAST IN THE MIX OF THINGS.  NORMALLY I DON'T LIKE TO

7   ARGUE THE FACTS BUT I'M GOING TO DO IT TODAY.

8           FIRST OF ALL, THE COMPLAINING WITNESS IN THIS CASE

9   IS 15 YEARS OLD, AND THERE IS A DISTINCTION THERE BETWEEN

10  SOMEBODY WHO WOULD TRY TO PREY ON A TODDLER IN A PARK OR

11  SOMETHING LIKE THAT, WHO MIGHT BE THREE OR FOUR, THAN

12  SOMEBODY WHO IS 15.  I THINK THE GUIDELINES EVEN MAKE AN

13  ADJUSTMENT OF AN ENHANCEMENT IF YOU'RE 12 YEARS OR UNDER, I

14  RECALL.  I THINK I WAS LOOKING AT THAT.

15          THE OTHER THING IS, IF THE ALLEGATIONS ARE TRUE,

16  THEY TOOK PLACE ON A COMPUTER SITE WHERE, I BELIEVE, YOU HAVE

17  TO REPRESENT YOU'RE 18 YEARS OLD, ON THAT SITE.  SO I THINK

18  IF THAT'S THE CASE, THEN SOMEBODY WHO IS 15 AND GOES ON TO

19  THAT SITE AND MAKES THOSE REPRESENTATIONS, THERE IS A

20  DISTINCTION BETWEEN THE TWO SCENARIOS I'M POINTING OUT TO THE

21  COURT.  ONE IS, OF COURSE, FAR MORE SERIOUS THAN THE OTHER IN

22  TERMS OF ANY ASSESSMENT OF DANGER TO THE COMMUNITY.

23          I MEAN, MAYBE UNDER THE LAW YOU CAN'T CONSENT WHEN

24  YOU'RE 15 LEGALLY, BUT I THINK THERE IS A DIFFERENCE BETWEEN

25  SOMEBODY WHO IS 15 AND SOMEBODY WHO'S LIKE A VERY YOUNG

1    CHILD.

2          THE OTHER THING I WOULD POINT OUT, IN THE TEXT

3    MESSAGES THAT WERE EXCHANGED, THEY ARE ENCOMPASSED IN THE

4    PROBABLE CAUSE STATEMENT.  IT DOESN'T SAY IN THERE ANYWHERE

5    WHERE THE COMPLAINING WITNESS SAYS, "I CAN'T WAIT UNTIL I'M

6    OLD ENOUGH."  IT JUST SAYS, "I CAN'T WAIT UNTIL I GET MY

7    LICENSE."  THERE ARE OTHER PEOPLE THAT ARE 18 YEARS OR OLDER

8    THAT DON'T HAVE THEIR DRIVER'S LICENSE.  I REPRESENT PLENTY

9    OF THEM.  IN FACT, MY DAUGHTER DIDN'T GET HER LICENSE UNTIL

10   SHE WAS 21.  SO I DON'T THINK THAT CAN BE READ AS SAYING THAT

11   THE PERSON, THE COMPLAINING WITNESS HERE MADE ANY KIND OF

12   REPRESENTATIONS AS TO THEIR AGE.

13         NOW, AS FAR AS ANY ISSUE OF DANGER TO THE

14   COMMUNITY, WHAT WE WOULD ASK THE COURT TO DO IN FASHIONING

15   CONDITIONS HERE SO AS TO PERMIT RELEASE, WOULD BE TO PLACE

16   HIM ON ELECTRONIC MONITORING WITH GPS, AND HAVE A HOUSE

17   ARREST OR HOME DETENTION, WHERE HE COULD NOT LEAVE THE

18   PREMISE UNLESS HE SECURED PERMISSION FROM THE PRETRIAL

19   OFFICER.

20         NOW, MY CLIENT DOES LIVE IN HIS OWN HOME WITH TWO

21   ROOMMATES.  THEY'RE BOTH ADULTS.  AND AS I INDICATED, THEY

22   ARE PRESENT IN COURT.  I GUESS THEY WOULD RESIDE THERE AT THE

23   HOUSE.  HIS PARENTS HAVE ALSO AGREED THAT THEY WOULD MOVE

24   INTO THE HOUSE WHILE THE CASE IS PENDING AGAINST HIM.  SO

25   THERE ARE PEOPLE THERE TO MONITOR HIS CONDUCT, IF THAT MAKES

1  THE COURT FEEL, YOU KNOW, MORE COMFORTABLE IN SETTING BAIL IN

2  THIS CASE.

3          I HAVE TWO PROPOSED SURETIES HERE THAT ARE HIS

4  SISTERS.  AND THE ONE SISTER IS NORMA MENDOZA.  SHE WORKS AT

5  RABOBANK HERE IN EL CENTRO, AND SHE'S BEEN EMPLOYED THERE FOR

6  19 YEARS.  AND SHE MAKES A SALARY IN EXCESS OF $70,000.  AND

7  MY CLIENT'S OTHER COUSIN -- I MEAN, SISTER, IS VALERIE

8  GONZALES.  SHE'S WORKED AT STARBUCKS FOR, I BELIEVE, EIGHT

9  YEARS, AND MAKES $45,000 A YEAR.  AND I'M ASKING THE COURT TO

10  SET BAIL IN THE AMOUNT OF $45,000 ON THE SIGNATURE SECURED BY

11  BOTH OF THEM.

12          NOW, IF THE COURT IS NOT INCLINED TO DO THAT, I

13  WOULD ASK THEN TO PERMIT NORMA MENDOZA TO SIGN A $70,000

14  BAIL.  I THINK WITH ELECTRONIC MONITORING, MY CLIENT'S STRONG

15  TIES TO THE COMMUNITY, THE FACT HIS PARENTS WOULD BE RESIDING

16  WITH HIM, THAT'S A REASONABLE BAIL IN THIS MATTER.

17          I HATE ARGUING IN THE ALTERNATIVE, AS I POINTED OUT

18  TO THIS COURT ON MANY OCCASIONS, BUT, IF NECESSARY, IF THE

19  COURT WOULD FEEL SAFER ABOUT IT, WE COULD SET A REAL PROPERTY

20  BOND.  I THINK SETTING BAIL AT 45, WITH THE TWO SIGNATURES,

21  ALL THE FAMILY INVOLVED HERE, AND THE ELECTRONIC MONITORING

22  IS SUFFICIENT.  BUT OTHERWISE, YOU KNOW, IF THE COURT REALLY

23  IS NOT COMFORTABLE WITH THAT, WE COULD GO WITH A REAL

24  PROPERTY BOND.  I DON'T KNOW THE AMOUNT.  I THINK THERE IS AT

25  LEAST 100,000 OF EQUITY, BUT HAVE NOT ASKED THEM TO GET A,

1  NOT AN APPRAISAL, BUT A REAL ESTATE AGENT'S OPINION AS TO THE

2  VALUE OF THAT PROPERTY AT THIS POINT.

3  　　　　BUT WITH ELECTRONIC MONITORING THEY KNOW WHERE HE

4  IS AT ALL TIMES.  AND HE DOESN'T HAVE ANY PRIOR RECORD, I

5  MEAN --

6  　　　　THE COURT:  DOES PRETRIAL SERVICES HAVE A

7  RECOMMENDATION?  OTHER THAN WHAT'S ALREADY --

8  　　　　PRETRIAL SERVICES:  NO, YOUR HONOR.

9  　　　　THE COURT:  OKAY.  WELL, I CONSIDERED ARGUMENTS

10 FROM BOTH ATTORNEYS.  ALSO, THE PRETRIAL SERVICES REPORT,

11 WHICH DOES RECOMMEND DETENTION, I MIGHT SAY.  I DON'T THINK

12 THAT THERE IS A RISK OF FLIGHT, YOU KNOW, FAMILY BEING HERE.

13 HE HAS STRONG FINANCIAL TIES TO THE AREA.  STRONG FAMILY

14 TIES.  HE WENT TO HIGH SCHOOL HERE.  HE'S PURCHASED A HOME

15 HERE.  FOR ALL OF THESE REASONS I DON'T SEE A RISK OF FLIGHT.

16 　　　　HOWEVER, WITH REGARD TO THE DANGER TO THE

17 COMMUNITY, I DO THINK THAT THERE IS CLEAR AND CONVINCING

18 EVIDENCE THAT THERE IS A DANGER TO THE COMMUNITY HERE.  WE'RE

19 NOT TALKING ABOUT JUST PICTURES.  WE'RE TALKING ABOUT ACTUAL

20 ACTS WITH A MINOR 15 YEARS OLD.  AND I BELIEVE I READ SOME

21 PLACE THAT MR. GONZALES WAS 28 YEARS OLD.  THERE SHOULD HAVE

22 BEEN -- I MEAN, I THINK YOU CAN ARGUE, POSSIBLY, THOSE FACTS

23 TO A JURY, BUT IN LOOKING AT THE PROBABLE CAUSE STATEMENT

24 HERE, IT LOOKS -- YOU KNOW, ON THE VERY FIRST PAGE OF THE

25 PROBABLE CAUSE STATEMENT, IT'S LABELED PAGE 2, IT SAYS, THE

1  VICTIM SAYS HE BELIEVED HE TOLD GONZALES HE WAS 15 YEARS OLD,

2  AND THAT GONZALES REQUESTED THAT HE SEND HIM A VIDEO OF

3  HIMSELF TO HIS E-MAIL ADDRESS.  SO, AT LEAST, FOR ME, I DON'T

4  HAVE ANY PROBLEM WITH THE DEFENDANT KNOWING THE AGE OF THE

5  VICTIM IN THIS CASE.

6          SO I AM WORRIED ABOUT CONTACT WITH THE VICTIM OR

7  OTHER VICTIMS, I SUPPOSE, IF THERE ARE ANY.  I DON'T KNOW.

8  BUT WITH THIS VICTIM, PARTICULARLY, I AM CONCERNED ABOUT HIS

9  SAFETY AND THAT THERE BE NO CONTACT BETWEEN THE TWO.

10         I'M GOING TO FIND THAT THE PRESUMPTION UNDER

11 2422(B) IS -- NOT BEEN REBUTTED SUBSTANTIALLY ENOUGH FOR ME

12 TO FEEL COMFORTABLE SETTING BAIL IN THIS CASE AS I BELIEVE

13 MR. GONZALES DOES PRESENT A DANGER TO THE COMMUNITY, AND I

14 THINK THERE IS CLEAR AND CONVINCING EVIDENCE OF THAT.  SO

15 THAT WILL BE MY ORDER.

16         MR. JOHNSON:  IS THE COURT'S RULING TODAY MADE

17 WITHOUT PREJUDICE?

18         THE COURT:  IT IS MADE WITHOUT PREJUDICE.

19         THESE ARE NOT EASY.  MR. JOHNSON, YOU MADE A VERY,

20 VERY FINE ARGUMENT AS TO WHY BAIL SHOULD BE SET IN THIS CASE.

21 I'LL GIVE YOU THAT.  BUT THE ALLEGATIONS ARE SUCH, AND THE

22 STATEMENT OF FACTS, AND PRETRIAL SERVICES RECOMMENDATION, I

23 JUST WOULD NOT FEEL COMFORTABLE SETTING BAIL WHEN WE HAVE AN

24 ACTUAL LIVE VICTIM IN THE SAME COMMUNITY.  AND I AM COGNIZANT

25 OF THE FACT THAT THE FAMILY COULD BE THERE TO WATCH HIM, ALL

1    OF THOSE THINGS, BUT I JUST -- I WILL TELL YOU, I DON'T FEEL

2    COMFORTABLE SETTING BAIL.  SO, I APPRECIATE IT.  THANK YOU.

3             MR. JOHNSON:  THANK YOU, YOUR HONOR.

4             (WHICH WERE ALL THE PROCEEDINGS

5             HELD IN THE ABOVE-ENTITLED CAUSE.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

COUNTY OF SAN DIEGO        )

                           )  SS.

STATE OF CALIFORNIA        )


I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, DO HEREBY

CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING

PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET FORTH;

THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY

MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER

CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY

STENOGRAPHIC NOTES.



DATE:  4-19-13


S:/MELISSA A. PIERSON

MELISSA A. PIERSON, CSR 12499 RPR

FEDERAL OFFICIAL COURT REPORTER