LAURA E DUFFY
United States Attorney
Charlotte E. Kaiser
Assistant U.S. Attorney
California Bar No.: 256356
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7282
Fax: (619) 546-0510
Email: charlotte.kaiser@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MANUEL JOSEPH GONZALES,<br><br>Defendant | Case No.: 13CR1248-WQH<br><br>**RESPONSE IN OPPOSITION TO MOTION TO COMPEL DISCOVERY, PRESERVE EVIDENCE, AND GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>Date: July 8, 2013<br>Time: 2:00 p.m.<br><br>The Honorable William Q. Hayes |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel Laura E. Duffy, United States Attorney, and Charlotte E. Kaiser, Assistant U.S. Attorney, and hereby files its Response in Opposition to the motion to compel discovery, preserve evidence, and grant leave to file further motions, which is based upon the files and records of this case.

//

//

I.

# STATEMENT OF THE CASE

On April 5, 2013, a grand jury returned a one-count indictment, charging Gonzales with enticement of a minor, in violation of 18 U.S.C. § 2422(b).

II.

# STATEMENT OF FACTS

On December 12, 2012, the FBI received information that minor victim #1 ("MV1" – age 15) had been having illicit on-line contact with adult men. Between December 12, 2012 and January 31, 2013, Homeland Security Investigations ("HSI") Special Agents interviewed MV1 several times. MVI provided information showing he was born in 1997 and lived in Imperial County, California. MV1 stated he made contact with a Manuel Gonzales ("Gonzales") on an online chat room He believed that he told Gonzales he was 15 years old and that Gonzales requested that MV1 send him a video of himself to Gonzales' email address.

MV1 described Gonzales as an approximately 23 year-old "Mexican" male, dark skinned, with brown eyes and approximately 5'7" to 5'9" tall. They met in person three times. All of the encounters occurred in Imperial County, California. On November 13, 2012, MV1 got into Gonzales' car, which he described as a red two-door car. They "made out," which MV1 described as kissing and touching each other's penises.

On November 18, 2012, at approximately 5 p.m., Gonzales picked up MV1 in his car and drove him to Gonzales' house. Gonzales pulled into the garage and they entered the house through there. MV1 said that they had sex in the master bedroom. After about an hour, Gonzales drove MV1 home.

On either Tuesday, December 4, 2012 or Wednesday, December 5, 2012, MV1 and Gonzales had oral sex in Gonzales' car after Gonzales picked up MV1 from school.

Through MV1 and a review of MV1's phone, the case agent identified Gonzales' number as 7xx-xxx-8544. Based on an administrative subpoena, the case agent learned that textPlus, an electronic mobile service provider, was the carrier. textPlus provided information showing the user name as "Gonzino." The number was registered on June 2, 2012. The nickname was "Manuel Gonzales." The associated email address was manueljgonzales@yahoo.com.

On January 15, 2013, Yahoo provided results from an administrative subpoena as to the email address for manueljgonzales@yahoo.com. The subscriber's name is Manuel Gonzales. The account was created on August 25, 2007 and still listed as active. There were IP log in records for November 12, 22, and 27, 2012 under IP address 75.36.45.228.

On January 24, 2013, AT&T responded to an administrative subpoena as to the IP address 75.36.45.228. The information showed that on November 28, 2012, the subscriber was another individual who lived at a designated residence in Heber, California 92249.

On January 29, 2013, the U.S. Postal Service provided information to the case agent regarding the mail recipients at the designated residence in Heber, California 92249. The U.S. Postal Service advised that Manuel J. Gonzales was one of three individuals receiving mail at that address.

The case agent was able to determine, based on the above information, that Gonzales lived at the designated residence in Heber, California 92249 and is the registered owner of a 2010 Chevrolet Camero, California license plate number 6NCG163, VIN: 2G1FKIEJ6A9212400 (known as "Gonzales' car"). Based on surveillance at the residence on January 29, 2012, the case agent observed a red Chevrolet Camero with California license plate number 6NCG163 in the garage. The case agent also determined that Gonzales was actually 28 years old, not 23 years old as Gonzales apparently had stated to MV1.

The case agent tracked down a photograph of Gonzales and added it to a six-pack photograph line-up. On January 31, 2013, MV1 reviewed that line-up and identified the photograph of Gonzales as the Gonzales he knew from the November to December 2012 encounters. (MV1 had previously reviewed two other photograph line-ups that did not include Gonzales' photograph and was unable to identify anyone.) MV1 reviewed a photograph of Gonzales' car and recognized it as Gonzales' car. He also reviewed a photograph of Gonzales' residence but was unsure if it was the house.

On February 1, 2013, the case agent received information as to Gonzales' work schedule from his employer. According to the 2012 work calendar, Gonzales' shift is 4:00 p.m. to midnight. On November 12 and 13, 2012, Gonzales was not scheduled for work. On November 18, 2012, Gonzales traded shifts with someone. December 4, 2012 was a regular day off for Gonzales. On December 5, 2012, Gonzales was scheduled to show up at work during his normal evening shift. His work number was listed as 5xx-xxx-7597.

On February 25, 2013, the case agent received toll records for Gonzales' number at 5xx-xxx-7597. The records show that Gonzales' email address is listed as manueljgonzales@yahoo.com. There are 12 text messages between this number and MV1's number. All of them occurred on December 4, 2012 between 3:13 p.m. and 3:25 p.m. An HIS agent was advised by AT&T Mobility that the company does not maintain content for text messages.

On February 26, 2013, the case agent received toll records from T-Mobile regarding MV1's number. The records show that there were approximately 440 text messages between MV1 and Gonzales (at 7xx-xxx-8544) from November 16 to December 4, 2012. On November 18, 2012, the day MV1 said he went to Gonzales' house, there are over 100 messages between the two numbers leading up to 4:36 p.m. Then there is a break in texting until 6:46 p.m.

On Thursday, March 7, 2013, Magistrate Judge Peter C. Lewis issued a federal search warrant for me to search textPlus for messages demonstrating Gonzales' illicit sexual contact with MV1 and other individuals believed to be minors. On Friday, March 8, 2013, I received the evidence from textPlus. The evidence supports MV1's statements that Gonzales knew he was underage and that Gonzales and he met up three times for sexual relations.

The following are excerpts of textPlus Messages between Gonzales and MV1:

**Friday, November 16, 2012 between 10:36:53 and 23:18:20 PST**

| | |
|---|---|
| Gonzales | Hey [MV1] what's up |
| MV1 | hey :) srry all late :b |
| Gonzales | It's cool wats up |
| MV1 | Nm just chillin :) what's up with u? |

\* \* \*

| | |
|---|---|
| MVI | Imma be in imperial Sunday Monday and Tuesday c: |
| Gonzales | Cool do we can chill? |
| MV1 | Yeah I'm down to chill :) whenever u can or whenever u want :} What time do u think u can go on any of those days? |
| Gonzales | Any time :) how long will u have? |
| MV1 | It depends. but probably a while. An hour tops. Maybe more if its late. But longer than last time ;} |
| Gonzales | Oh ok that would be cool ;) |
| MV1 | Yeah ;) I'll be looking forward to it ;) I can't wait till I get my license so I can go to u ;} |
| Gonzales | Yea lol me either. So what are u gonna want to do? Park somewhere or come over to my house |

**Sunday, November 18, 2012 between 14:26:13 and 14:52:32 PST**

*Response in Opposition to the motion to compel discovery, preserve evidence, and grant leave to file*

*13CR1248-WQH*

| | | |
|---|---|---|
| 1 | MV1 | Yeah ;) I'm ready for tonight ;) |
| 2 | Gonzales | Me too |

**Sunday, November 18, 2012 between 16:03:24 and 16:36:25 PST**

| | | |
|---|---|---|
| | Gonzales | Perfect should I pick u up on the block over? |
| | MV1 | park right behind [* * *] |
| | Gonzales | Ok cool |

**Sunday, November 18, 2012 between 18:46:03 and 18:50:51**

| | | |
|---|---|---|
| | Gonzales | Thanks again for coming sorry it ended so soon. |
| | MV1 | It was my pleasure ;) thank YOU. And its okay. it was still great :) |

**Monday, November 19, 2012 between 14:12:43 and 15:48:25 PST**

| | | |
|---|---|---|
| | MV1 | Hey [MV1] what's up |
| | Gonzales | Hey manuel :) nothing much just got home from [* * *] :b what's up with u ? |

**Tuesday, November 20, 2012 between 14:11:39 and 14:39:34 PST**

MV1    Yeah I'm okay :) I sent twomssgs after u said u were painting but I guess u never got them. I'm still sore today lol

Gonzales   Oh man sore? I'm sorry. Does it hurt bad?

* * *

| | | |
|---|---|---|
| | Gonzales | Yea :p man we came close to getting caught lol I knew I heard something though. |
| | MV1 | Thankfully we were dressed and everything ;b and thankfully she had to go to the bathroom lol. Did she ask u anything when u got back home ? |
| | Gonzales | Nope she didn't actually lol so that's good. What are u up to? |

**Friday, November 23, 2012 between 22:48:02 and 23:01:03 PST**

| | | |
|---|---|---|
| 1 | MV1 | Manuel if ur there plz reply. I really like u and idk what happned to make u stop replying. Plz do. I don't wanna stop tlking to u like this. |
| 2 | | |
| 3 | Gonzales | No hey sorry it's not even like that dude. I had to work 16 hours today and just been super busy! |
| 4 | | |
| 5 | MV1 | Oh sorry. I didn't know if u like stopped tlking to me Cuz u wanted to like hit it and quit it or something |
| 6 | | |
| 7 | Gonzales | No [MV1] :) I like you :) just been super busy :( |

**Tuesday, November 27, 2012 between 19:48:42 and 20:08:45 PST**

| | | |
|---|---|---|
| 10 | MV1 | Lol I wish I were there to help u ;) I wanna taste ur lips and ur dick ;} |
| 11 | Gonzales | Damn me too. Are u still sore? |
| 12 | MV1 | Nope :) the soreness lasted like 2 or 3 days. But it was a good sore :) it reminded me of how good u were c; and when u hit my gspot 0.0 SO good ;} |

**Tuesday, December 4, 2012 between 14:04:48 and 14:36:19 PST**

| | | |
|---|---|---|
| 16 | MV1 | r u coming ? |
| 17 | Gonzales | At 310 right |
| 18 | MV1 | no 3 :15 cutie (: |
| 19 | Gonzales | Ok where can I pick u up so no one sees |
| 20 | MV1 | like on the side of [* * *] like next to the pool . no ome really goes there and u can be my "cousin" |
| 22 | Gonzales | Well what if I pick u up on the block over. |
| 23 | MV1 | okay (: lemme know what cars r around u so ill find u (: |

On or about March 13, 2013, agents arrested Gonzales pursuant to an arrest warrant issued by Magistrate Judge Lewis and also performed a search of Gonzales' residence. During his post-arrest interview, Gonzales admitted to have sexual relations with MV#1 but claimed that he thought MV#1 was eighteen years-old. He

also admitted to possessing child pornography. A number of items, including computer and digital media, were seized and turned positive with child pornography.

### III.

### ARGUMENT

A. The Motions to Compel Discovery Should be Denied As Moot

As of the date of this Response, the United States has produced discovery or otherwise made the child pornography available for review under 18 U.S.C. § 3509(m). The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jenks Act, 18 U.S.C. § 3500 et seq., and Federal Rule of Criminal Procedure 16. As of the date of this Response, the United States has received no reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests that the Court not issue any orders compelling specific discovery by the United States at this time.

    1. The United States Has Disclosed Information Subject To Disclosure Under The Federal Rules Of Criminal Procedure, The Federal Rules Of Evidence and 18 U.S.C. § 3509

        a. The United States Will Comply With Rule 16(a)(1)(A) and 16(a)(1)(B)

The United States has complied and will continue to comply with Federal Rule of Criminal Procedure 16(a)(1)(A) and 16(a)(1)(B) by providing all of Defendant's statements applicable to the instant case that are known to the United States as of this date. The United States recognizes its obligations under Rule 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the Defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." Fed. R. Crim. P. 16(a)(1)(A). The United States already provided copies of the reports of investigation and DVDs detailing Defendant's and other witnesses' statements.

8

*Response in Opposition to the motion to compel discovery, preserve evidence, and grant leave to file*

13CR1248-WQH

The United States has also turned over a number of investigative reports, including the reports of investigation generated in this case. If additional reports by law enforcement agents come to light that are applicable to the instant case, the United States will supplement its discovery and provide those reports to Defendant.

The United States objects to providing Defendant with a copy of any handwritten notes of investigating agents summarizing oral statements made by Defendant. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).

The United States also objects to Defendant's request for the production of any rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992). Moreover, the production of an agent's notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to be the United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

  b. The United States Will Comply With Rule 16(a)(1)(D)

The United States will disclose any information that it has regarding Defendant's criminal history contained in criminal rap sheet summaries. See Fed. R. Crim. P. 16(a)(1)(D).

  c. The United States Will Comply With Rule 16(a)(1)(E)

The United States has complied and will continue to comply with Federal Rule of Criminal Procedure 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, photograph, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant. The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution.

Given the length of delay of the instant case due to Defendant absconding from custody, the United States doubts the majority of evidence remains preserved or in federal custody. The United States currently is looking into the matter.

d. The United States Will Comply With Rule 16(a)(1)(F)

The United States has complied and will continue to comply with Federal Rule of Criminal Procedure 16(a)(1)(F) in permitting Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, that are within the possession of the Government, and by the exercise of due diligence may become known to the attorney for the United States and are material to the preparation of the defense or are intended for use by the Government as evidence-in-chief at the trial.

e. The United States Will Comply With Rule 16(a)(1)(G)

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the United States will provide the defense with notice of any expert witnesses the testimony of whom the Government intends to use under Rules 702, 703, or 705 of the Fed. R. of Evid. in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses'

qualifications.  Reciprocally, the United States requests that the defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(c).

    f.  The United States Will Comply with Rules 404 and 609

The United States has complied and will continue to comply with its obligations under Federal Rules of Evidence 404(b) and 609.  Furthermore, pursuant to Rules 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial.  See Fed. R. Evid. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts.  The Committee does not intend that the amendment will supersede other rules of admissibility or disclosure[.]").

  2.  The Government Will Comply With Its Obligations Under <u>Brady v. Maryland</u> And <u>Giglio v. United States</u>

The United States has complied and will continue to comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  Under <u>Brady</u>, the United States must disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment.  However, the United States does not need to disclose "every bit of information that might affect the jury's decision."  <u>United States v. Gardner</u>, 611 F.2d 770, 774-75 (9th Cir. 1980).  The standard for disclosure is materiality.  <u>Id.</u>  "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense."  <u>United States v. Antonakeas</u>, 255 F.3d 714, 725 (9th Cir. 2001).

The United States recognizes that its obligation under <u>Brady</u> covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States.  See <u>Giglio</u>, 405 U.S. at 154; <u>see also</u> <u>United States v. Bagley</u>, 473 U.S. 667, 676-77 (1985).  The United States recognizes its

obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady. The United States is not obligated under Brady to furnish a defendant with information which he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to Defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect their guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to their sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.").

### 3. Discovery Regarding Government Witnesses

#### a. Agreements

The United States has disclosed or will disclose the terms of any agreements by federal agents, employees, or attorneys with witnesses who will testify at trial. Such information will be provided at or before the time of the filing of the Government's

trial memorandum. The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).

b. Bias or Prejudice

As discussed above, the United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

c. Criminal Investigations

The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective Government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective Government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information–if any exists–related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

### d. Ability to Perceive

The United States has produced or will produce any evidence that the ability of a government trial witness to perceive, communicate, or tell the truth is impaired.

### e. Witness Names and Addresses

The United States has already provided Defendant with the reports that contain the names of agents involved in the apprehension and interviews of Defendant. Although not required in non-capital cases, in its trial memorandum, the United States will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief. See United States v. W.R. Grace, 526 F.3d 499, 510-11 (9th Cir. 2008) (stating that while Rule 16 does not mandate the disclosure of non-expert witnesses, the district court has the authority to order the United States to produce a witness list pretrial). While the United States has agreed to disclose a list of its witnesses in its trial memorandum, we object to the disclosure of witness' addresses.

The Ninth Circuit addressed this issue in United States v. Jones, 612 F.2d 453 (9th Cir. 1979). In Jones, the Court made it clear that, absent a showing of necessity by the defense, there should be no pretrial disclosure of the identity of Government witnesses. Id. at 455. Several other Ninth Circuit cases have reached the same conclusion. See, e.g., United States v. Armstrong, 621 F.2d 951, 1954 (9th Cir. 1980); United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980); United States v. Paseur, 501 F.2d 966, 972 (9th Cir. 1974) ("A defendant is not entitled as a matter of right to the name and address of any witness.").

### f. Witnesses Not to Be Called

The United States is not required to disclose all evidence it has or to make an accounting to Defendant of the investigative work it has performed. See Moore v. Illinois, 408 U.S. 786, 795 (1972); United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980). Accordingly, the United States objects to any request by Defendant for discovery concerning any individuals whom the Government does not intend to call as witnesses.

### g. Favorable Witnesses

The United States has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning Defendant which meet the requirements of Brady.

### h. Henthorn Material

The United States will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review. As such, the United States requests this Court to deny Defendant's request for all personnel records containing citizen complaints and internal affair documents of officers involved in the arrest.

### i. Statements Relevant to the Defense

Again, the United States will comply with all of its discovery obligations. Contrary to Defendant's assertion, the Ninth Circuit's decision in United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982), applies to a "statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert." Id. at 1114 (emphasis added). The United States has already

15

*Response in Opposition to the motion to compel discovery, preserve evidence, and grant leave to file*  *13CR1248-WQH*

disclosed that information. As a result, there is no "particularized need" for disclosure of the grand jury transcripts. United States v. Perez, 67 F.3d 1371, 1380-81 (9th Cir. 1995), vacated in part, 116 F.3d 840 (9th Cir. 1997) (en banc).

j. Jencks Act Material

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the Government agent correctly understood what the witness said. See United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991). In addition, rough notes by a Government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, although the United States anticipates providing most, if not all, Jencks material well in advance of trial, it reserves the right to withhold Jencks statements of any particular witness it deems necessary until after they testify.

k. Informants and Cooperating Witnesses

Disclosure of an informant's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. See

Roviaro v. United States, 353 U.S. 52, 60-61 (1957). There is no automatic right to pretrial discovery of information regarding informants and prospective government witnesses. See United States v. Jones, 612 F.2d 453 (9th Cir. 1979). That said, at this time, the United States is unaware of any informants or cooperating witnesses in this matter. The United States is aware of its obligations under Giglio and will continue to comply with them.

B. The United States Does Not Object to a Preservation of Seized Evidence

As discussed above, reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution.

C. Defense May Inspect the Evidence

The United States has complied and will continue to comply with Federal Rule of Criminal Procedure 16 and 18 U.S.C. § 3509 in allowing defense counsel an opportunity, upon reasonable notice, to examine, photograph, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

D. The Motion to Grant Leave to File Further Motions

The United States does not object to the granting of leave to file further motions as long as the order applies equally to both parties and any additional defense motions are based on newly discovered evidence or discovery provided by the case agent subsequent to the instant motion.

IV.

CONCLUSION

Accordingly, for the reasons set forth above or any other reason apparent to this court, Defendant's motion should be denied.

DATED: July 1, 2013                     Respectfully submitted,

                                        LAURA E. DUFFY
                                        United States Attorney

                                        /s/Charlotte E. Kaiser
                                        Assistant United States Attorney

|   |   |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **SOUTHERN DISTRICT OF CALIFORNIA** | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 13CR1248-WQH |
| Plaintiff, | |
| v. | **PROOF OF SERVICE** |
| MANUEL JOSEPH GONZALES, | |
| Defendant. | |

IT IS HEREBY CERTIFIED THAT:

I, Charlotte E. Kaiser, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response in Opposition to the motion to compel discovery, preserve evidence, and grant leave to file further motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Donald L. Levine

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

1. None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED: July 1, 2013            /s/Charlotte E. Kaiser
                                   Assistant United States Attorney